LAW OFFICES OF JAMES W. SPERTUS
James W. Spertus (SBN 159825)
Amanda R. Touchton (SBN 220430)
1990 South Bundy Dr., Suite 705
Los Angeles, California 90025
Telephone: (310) 826-4700
Facsimile: (310) 826-4711
jim@spertuslaw.com
amanda@spertuslaw.com

Attorneys for Defendant
Hamid Tabatabai

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. CR 10-1055-PA |
|---|---|
| Plaintiff, | **REPLY IN SUPPORT OF DEFENDANT HAMID TABATABAI'S MOTION TO SEVER** |
| vs. | |
| EZRI NAMVAR, and HAMID TABATABAI | Date: March 28, 2011<br>Time: 3:00 p.m.<br>Courtroom: 15<br>Judge: The Honorable Percy Anderson |
| Defendants. | |
| | Final Status Conf.: 4/18/11<br>Trial Date: 5/3/11 |

Defendant Hamid Tabatabai ("Mr. Tabatabai") hereby replies to the Opposition filed by the government to Mr. Tabatabai's Motion to Sever.

Dated: March 13, 2011         Law Offices of James W. Spertus

                              By:   /S
                                    James W. Spertus
                                    Amanda R. Touchton
                                    Attorneys for Hamid Tabatabai

DEFENDANT TABATABAI'S REPLY IN SUPPORT OF MOTION TO SEVER

## I. INTRODUCTION

The government opposes Mr. Tabatabai's severance motion on three distinct grounds. The government argues (1) that Mr. Tabatabai failed to make a sufficient showing of prejudice from a joint trial to justify a severance; (2) that Ezri Namvar's proffered testimony is conditioned on Mr. Namvar's trial proceeding first ; and (3) that it would be inefficient and an uneconomical use of judicial resources for Mr. Tabatabai's trial to be severed from Mr. Namvar's.  Mr. Tabatabai responds to these arguments with the following points: (1) Mr. Tabatabai submitted <u>in camera</u> and under seal a declaration from Mr. Namvar that is substantially exculpatory for Mr. Tabatabai, and sets forth in detail Mr. Namvar's proffered testimony; (2) Mr. Namvar has expressed his unconditional willingness to testify in a separate trial for Mr. Tabatabai so long as Mr. Namvar's trial proceeds first; and (3) efficiency and economy do not trump Mr. Tabatabai's need for a severance to secure the substantially exculpatory testimony from Mr. Namvar.

Forcing Mr. Tabatabai to defend himself in a joint trial that could preclude Mr. Tabatabai from calling Mr. Namvar as a witness would deny Mr. Tabatabai the right to present the critical evidence in support of his defense set forth in Mr. Namvar's declaration.  Only Mr. Namvar can testify to the crucial facts set forth in that declaration, and the government is simply wrong to surmise that testimony from the person who owned and controlled the entities at issue in this case would not be substantially exculpatory for the only employee charged with wrongdoing.  Mr. Namvar is not only a co-defendant, he is perhaps the most important defense witness from Mr. Tabatabai's perspective in this entire matter.  The proffered testimony from Mr. Namvar negates the crucial element of "intent to defraud" by Mr. Tabatabai.  Mr. Namvar's testimony will therefore be "substantially exculpatory." Further, Mr. Namvar's testimony is not conditioned on any fact other than his need to proceed first to trial so that he can preserve his Fifth Amendment rights at his

own trial. This is a well-recognized and accepted "condition" that is present in every motion to sever based on the need for a codefendant's testimony, and the cases cited below expressly hold that it is improper for the government to argue against severance based solely on this "condition." Finally, although efficiency is a factor for the Court to consider when evaluating a severance motion, efficiency cannot outweigh a criminal defendant's right to present witnesses in his own defense. Mr. Tabatabai, therefore, respectfully requests that the Court grant his severance motion under Fed.R.Crim.Pro. 14 to ensure that Mr. Tabatabai will be able to present testimony from Mr. Namvar at trial.

## II.   LEGAL ANALYSIS

### A.   Mr. Tabatabai Will Be Prejudiced If Severance Is Denied

The Ninth Circuit has consistently recognized the very real prejudice that can result from a joint trial when an otherwise willing witness will not testify in a joint trial. The accepted forms of prejudice include the "unavailability of full cross-examination, lack of opportunity to present an individual defense, denial of Sixth Amendment confrontation rights, lack of separate counsel among defendants, with conflicting interests, or failure to properly instruct the jury on the admissibility of evidence as to each defendant." United States v. Escalante, 637 F. 2d 1197, 1201 (9th Cir. 1980), cert. denied, 449 U.S. 856 (1980). Here, Mr. Tabatabai moves for severance on one of the most common and well recognized grounds for severance: the need to present the exculpatory testimony of a co-defendant. See Zafiro v. United States, 506 U.S. 534, 539 (1993); United States v. Echeles, 352 F.2d 892 (7th Cir. 1965).

In minimizing the prejudice resulting to Mr. Tabatabai, the government places undue emphasis on the preference for joint trials in the federal system. Although there is such a preference for joint trials, that preference must yield where a joint trial would compromise a defendant's fundamental rights to call key witnesses in his

defense. Zafiro, 506 U.S. at 539. This is so even where joinder is otherwise appropriate under Rule 8(b). Id. Although severance determinations will be "influenced by the truism that joint trials are usually less burdensome to the prosecution than separate trials, [t]his economy does not entitle us to treat lightly" a defendant's motion for a severed trial. United States v. Kaplan, 554 F. 2d 958, 967 (9th Cir. 1977), cert. denied, 434 U.S. 956 (1977) (finding the failure to sever an abuse of discretion).

> No defendant should ever be deprived of a fair trial because it is more economical for the government to try severed defendants in one trial rather than protracted multiple trials. The goal of judicial process is not to decide cases as quickly and as inexpensively as possible.

United States v. Bosai, 573 F. 2d 827, 832 (3rd Cir. 1978), cert. denied, 436 U.S. 911, rehearing denied, 438 U.S. 908.

Mr. Tabatabai's right to present witnesses in his own defense is one of a criminal defendant's core trial rights. Taylor v. Illinois, 484 U.S. 400, 408 (1988). Indeed, "[f]ew rights are more fundamental." Id. Mr. Tabatabai has shown ample prejudice should his motion for severance be denied, and such prejudice should outweigh the government's desire for efficient trial presentation.

### B. Mr. Namvar's Testimony Is Substantially Exculpatory

Mr. Namvar was Mr. Tabatabai's employer, and the owner and operator of Namco Financial Exchange ("NFE") and Namco Capital Group ("NCG"). Despite Mr. Namvar's importance, which is obvious from the face of the indictment, the government contends that Mr. Tabatabai has not shown that Mr. Namvar's testimony would be "substantially exculpatory." (Opposition, pp. 9-12.) The only case that the government cites to support this contention is United States v. Reese, 2 F.3d 870 (9th Cir. 1993). (Opposition, p. 12). However, Reese does not define

"substantially exculpatory" in the manner that the government suggests. Proposed testimony from a co-defendant does not need to defeat every single allegation made by the government in an indictment, or contract all evidence offered by the government to support its theory of guilt. Rather, <u>Reese</u> simply stands for the proposition that proposed testimony which "essentially consist[s] of a series of denials that the testimony of certain government witnesses was true" is insufficient to justify severance. <u>Reese</u>, 2 F.3d at 892. Mr. Tabatabai is not offering the testimony of Mr. Namvar merely to contradict testimony from government witnesses. Rather, Mr. Tabatabai is offering the testimony of Mr. Namvar to establish that he had no intent to defraud, even if each and every government witnesses testifies truthfully. No other witness is as critically important to establish Mr. Tabatabai's lawful intent behind many uncontroverted facts that the government argues supports a finding of guilt. In stark contrast to the defendant in <u>Reese</u>, Mr. Tabatabai has presented a far more exacting proffer that explains specific facts that will negate the critical elements of knowledge and intent required before the government can obtain convictions for wire fraud as charged in the Indictment.

The facts set forth in Mr. Tabatabai's <u>in camera</u> submission are far more akin to the facts proffered by the co-defendant witness in <u>United States v. Seifert</u>, 648 F.2d 557 (9th Cir. 1980). In <u>Seifert</u>, the defendant sought to introduce exculpatory testimony from his co-defendant and business partner in the company at the heart of the alleged scheme to defraud. The co-defendant witness, Ehrlich, proffered testimony that was not self-incriminating, but it was exculpatory for Seifert. <u>Seifert</u>, 648 F.2d at 563. Ehrlich's proffered testimony went directly to the issue of intent and "Seifert's knowing participation in the scheme." <u>Id.</u> at 564. The trial court denied a motion to sever, which came mid-trial at the close of the government's case, but the Ninth Circuit reversed and laid out the proper standard for severance based on the need for a codefendant's testimony: "[T]he defendant must show that

4.
DEFENDANT TABATABAI'S REPLY IN SUPPORT OF MOTION TO SEVER

he would call the codefendant at a severed trial, that the codefendant would in fact testify and that the testimony would be favorable to the moving defendant." Id. at 563.  Mr. Tabatabi has satisfied this test with his in camera submission and, if Mr. Namvar testifies on Mr. Tabatabai's behalf, Mr. Tabatabai would likely be acquitted because he lacked the "intent to defraud" required for a finding of guilt.

The government claims that testimony from NFE employees and NFE investors will establish that Mr. Tabatabai had access to information relating to NFE accounts, and personally directed representations to be made to investors. (Opposition, pp. 9-11.)   Mr. Namvar, as is set forth in more detail in the under seal and in camera filing submitted with the moving papers, will testify to the contrary and establish that there was no intent to defraud depositors as charged in the Indictment.   The government's extensive recitation of the evidence of Mr. Tabatabai's actions reinforces Mr. Tabatabai's need to call Mr. Namvar as a witness to refute the suggestion by the government that such actions evidence an intent to defraud.

Beyond providing exonerating evidence relating to Mr. Tabatabai's knowledge and participation in the alleged fraud, Mr. Namvar's testimony is also critical to refute the government's premise that there was a fraud in the first place. Only Mr. Namvar, can supply critical facts relating to NFE and NCG finances and business practices that will negate the intent to defraud element of the charged offenses.  In addition to weighing the exculpatory nature of the proposed testimony, "[t]he trial court must also consider the possible weight and credibility of the testimony and the economy of the severance at the point the motion was made." Id. Mr. Namvar's testimony is entitled to tremendous weight and credibility, given his leadership position at the relevant entities.  As was the case in Seifert, Mr. Namvar is "in a position to rebut directly the government evidence of [Mr. Tabatabai's] knowing participation in the [alleged] scheme." Id.   Under these circumstances, the

interest of judicial economy must yield to the need to protect Mr. Tabatabai's right to call an essential trial witness.

### C. Mr. Namvar's Testimony Is Not Conditional

The government next argues that Mr. Namvar's "condition" that his trial occur before Mr. Tabatabai's trial supports denying the motion to sever. In fact, the government argues that this requirement is a "fatal flaw" in the severance motion. (Opposition, p. 12, ln. 17.5). However, the government ignores the very basis for severance in these circumstances, which is to permit the moving party to present testimony from a co-defendant who would otherwise assert his Fifth Amendment right against self-incrimination. This requirement does not make the testimony "conditional," and the cases cited by the government do not stand for the proposition for which they were cited. Both government cases instead dealt with specific facts not present here.

First, the government cites United States v. Little, 753 F.2d 1420 (9th Cir. 1984). In Little, the co-defendants agreed to testify only "when their own proceedings, including any appeals were complete." 753 F.2d at 1446. The Ninth Circuit held in Little that the requirement that all appeals be finally completed before they would testify made the "scheduling of the severed trials . . . impossible." Id. However, Mr. Namvar has placed no such condition on his testimony. Mr. Namvar's only request is that his trial proceed first, not that any appeals be completed in the event he is convicted.

Second, the government cites United States v. Gay, 567 F.2d 916 (1978). In Gay, severance was denied because the district court believed the defendants in that case were "play[ing] games" with the court. Obviously the denial of a severance motion is proper when defendants are playing games, but Mr. Namvar's proffered declaration establishes with specificity that his testimony is substantially exculpatory and the defendants are not playing

games. In <u>Gay</u>, the Ninth Circuit found that the defendants had not met their burden of showing that the trial court abused its discretion in finding the defendants were engaged in gamesmanship, but the Ninth Circuit expressly rejected the government's present claim that a request by a co-defendant that his trial proceed first defeats a motion for severance. The Court is <u>Gay</u> expressly stated the following:

> We mean in no way to suggest that trial courts should, in all cases, reject an offer of a co-defendant witness to provide exculpatory testimony conditioned on a separate trial <u>prior</u> to that of the movant. Indeed, <u>there is no question but that the purpose of a severance is more fully implemented when the co-defendant witness is tried first,</u> and consequently is not deterred from providing exculpatory testimony by the prospect of forfeiting his Fifth Amendment privilege.

<u>Id.</u> at 921. The government's argument that Mr. Tabatabai's motion suffers from a "fatal flaw" because he requires that his trial proceed first is wrong. There is no fatal flaw in Mr. Tabatabai's severance motion that arises from Mr. Namvar's requirement that his trial proceed first.

Mr. Tabatabai has established that (1) Mr. Namvar will testify on his behalf if the case is severed, (2) Mr. Namvar will provide specific, detailed testimony that is exculpatory, and (3) Mr. Namvar has direct knowledge of the facts about which he would testify, which facts go to the heart of the allegations of fraud made against Mr. Tabatabai in the Indictment. Mr. Namvar's proposed testimony, therefore, meets all of the requirements for severance pursuant to Rule 14.

### III. CONCLUSION

For the reasons set forth above, in the moving papers, in the Supplemental Addendum filed <u>under seal</u> and in camera, and in the Declaration of Ezri Namvar filed <u>under seal</u> and in camera, Mr. Tabatabai respectfully requests that his trial be severed from that of his co-defendant Ezri Namvar so that he can assure the testimony of Mr. Namvar at trial.

Dated: March 13, 2011                           Law Offices of James W. Spertus

                                                By:   /S
                                                      James W. Spertus
                                                      Amanda R. Touchton
                                                      Attorneys for Hamid Tabatabai

8.
DEFENDANT TABATABAI'S REPLY IN SUPPORT OF MOTION TO SEVER