1   ANDRÉ BIROTTE JR.
    United States Attorney
2   ROBERT E. DUGDALE
    Assistant United States Attorney
3   Chief, Criminal Division
    BRIAN E. KLEIN (Cal. State Bar No.: 258486)
4   MONICA D. MANGE (Cal. State Bar No.: 234950)
    Assistant United States Attorneys
5   Major Frauds Section
        1100 United States Courthouse
6       312 North Spring Street
        Los Angeles, California 90012
7       Telephone: (213) 894-6920/6529
        Facsimile: (213) 894-6269
8       E-mail: brian.klein@usdoj.gov
               monica.mange@usdoj.gov
9
    Attorneys for Plaintiff
10  United States of America

11              UNITED STATES DISTRICT COURT

12          FOR THE CENTRAL DISTRICT OF CALIFORNIA

13  UNITED STATES OF AMERICA,    ) NO. CR 10-1055-PA
                                 )
14            Plaintiff,         )
                                 )
15            v.                 ) GOVERNMENT'S TRIAL BRIEF RE: RULE
                                 ) 29 OF THE FEDERAL RULES OF CRIMINAL
                                 ) PROCEDURE IN CONNECTION WITH
16  EZRI NAMVAR,                 ) DEFENDANT HAMID TABATABAI
       aka Ezri Namvar           )
17      Moghadam,                )
    and HAMID TABATABAI,         )
18     aka Hamid Taba,           )
                                 )
19            Defendants.        )
                                 )
20                               )
                                 )
21  _____ )

22

23       After the government rested its case-in-chief on Friday, May

24  13, 2011, defendants Ezri Namvar and Hamid Tabatabai separately

25  moved pursuant to Rule 29 of the Federal Rules of Criminal

26  Procedure ("Rule 29") for a judgment of acquittal on all counts

27  of the indictment.  The government opposed both motions.

28  Following argument by the parties, the Court denied defendant

1  Namvar's motion and took defendant Tabatabai's motion under
2  submission.

3      Under Rule 29 the Court shall order entry of judgment of
4  acquittal if the evidence is insufficient to sustain a
5  conviction.  Fed. R. Crim. P. 29(a).  "There is sufficient
6  evidence to support conviction if, viewing the evidence in the
7  light most favorable to the prosecution, any rational trier of
8  fact could have found the essential elements of the crime beyond
9  a reasonable doubt."  United States v. Magallon-Jimenez, 219 F.3d
10 1109, 1112 (9th Cir. 2000) (citing Jackson v. Virginia, 443 U.S.
11 307, 319 (1979); United States v. Lennick, 18 F.3d 814, 818 (9th
12 Cir. 1994)).  When considering such a motion, "all reasonable
13 inferences are to be drawn in favor of the government. . . ."
14 United States v. Alvarez-Valenzuela, 231 F.3d 1198, 1201 (9th
15 Cir. 2000) (citation omitted).  The trial court is to consider
16 both direct and circumstantial evidence in reaching its ruling
17 under Rule 29.  See Magallon-Jimenez, 219 F.3d at 1112.

18     There is more than sufficient evidence to support the
19 conviction of defendant Tabatabai.  The government emphasizes for
20 the Court the following evidence the government presented at
21 trial during its case-in-chief regarding defendant Tabatabai's
22 knowing participation in the charged scheme to defraud and his
23 intent to defraud the four victims:

24 •   Defendant Tabatabai entered into the exchange agreements
        with the four victims on behalf of Namco Financial Exchange
25      Corp ("NFE") at issue, all of which promised the victims
        their money would be held in a bank or savings account of
26      NFE.[1]  In addition, he entered into the earlier exchange
        agreements with the victims.[2]
27

28      ───────────────

        [1]See exhibits 101, 301, 401, and 501.

        [2]See, for example, exhibits 1066, 1081, and 1169.

                            2

- Defendant Tabatabai was the Vice President and Controller of NFE and the Controller at Namco Capital Group, Inc. ("NCG").[3]

- At defendant Tabatabai's exclusive direction, the victims' exchange proceeds was transferred, either via check or wire, in and out of the bank accounts of NFE and NCG.[4]

- Defendant Tabatabai regularly checked the online bank accounts of both NFE and NCG during the relevant timeframe.[5]

- Defendant Tabatabai knew that Sunnylane Partners LLC wanted its exchange proceeds to remain at Wells Fargo.[6]

- All four victims lost money that they had entrusted to NFE to hold in safekeeping at a NFE bank or savings account in connection with the 1031 exchanges at issue, with one victim losing all of the money entrusted to NFE.

When the direct and circumstantial evidence is viewed in a light most favorable to the government, it establishes that defendant Tabatabai was defendant Namvar's right-hand man in the charged scheme to defraud the four victims and he acted knowingly and with the intent to defraud those victims.  After all, defendant Tabatabai entered into the exchange agreements at issue with each of the victims and thus was the one who put the fraud scheme in motion, representing to the victims that they were about to do a 1031 exchange in which their money would be held safely at a NFE bank account throughout the entire 1031 exchange process.  And because defendant Tabatbai had been entering into the same exchange agreement for years, he was familiar with them

---

[3]See exhibit 63, the testimony of "Sasha" Ettehadieh and "Rollie" Pronuevo, as well as the testimony of Paul Laska.

[4]See the testimony of Ettehadieh and Pronuevo, as well as the online bank record exhibits.

[5]See exhibits 34, 35, and 36, all of which are summary charts.

[6]See the testimony of Larry Russ and Rick August, as well as the related exhibits, such as exhibit 452.

3

and how the four victims would perceive them.  In addition,
defendant Tabatabai knew exactly how the victim's money was going
to be misused and dissipated because he had access to the online
bank accounts of both NFE and NCG and it was only at his
direction that the bookkeepers moved any of the victims' money.
Lastly, the four victims lost money that they had entrusted to
NFE to hold in safekeeping at a NFE bank account in connection
with the 1031 exchanges at issue, with one victim losing all of
the money entrusted to NFE.

     In support of defendant Tabatabai's motion for acquittal
under Rule 29, his counsel referred the Court to United States v.
McDonald, 576 F.2d 1350 (9th Cir. 1978).  McDonald, however,
does not support defendant Tabatabai's Rule 29 motion.  In
McDonald, the Ninth Circuit found that the evidence was
insufficient to support McDonald's conviction because he was, in
essence, a middleman who was merely involved in the fraud.  Id.
at 1359.  The company engaging in the fraud scheme in McDonald,
Western Land Sales, had hired McDonald's company to market land
sale contracts to investors for a commission.  Id. at 1352.  Many
of those contracts ended up being fraudulent.  Id. at 1353.
During the time McDonald was selling those fraudulent contracts,
he received no complaints from investors about the contracts and
he himself invested "heavily" in the contracts, which resulted in
him suffering losses when the scheme unraveled.  Id. at 1359.
Defendant Tabatabai's situation could not be more different from
McDonald's.  Defendant Tabatabai worked directly for the company
engaged in the fraudulent scheme, NFE, and while working there
knowingly played a key role in the fraud as discussed above.  He
also suffered no losses as a result of the fraud scheme (i.e., he

4

1    was not an 1031 client who did not get his or her exchange

2    proceeds back because it was spent without his authorization or

3    knowledge).  Defendant Tabatabai was knee-deep in the fraud

4    scheme, not a peripheral player.

5         Indeed, defendant Tabatabai's position is akin to another

6    defendant in the McDonald case, Stewart, whose conviction the

7    Ninth Circuit upheld.  In support of upholding Stewart's

8    conviction, the Ninth Circuit noted that Stewart, and those

9    working for him, supplied Western Land Sales with the fraudulent

10   contracts at issue.  Similarly, in this case, defendant Tabatabai

11   entered into the exchange agreements at issue with each of the

12   victims.  Moreover, for the reasons explained above, defendant

13   Tabatabai, "unlike McDonald, had specific knowledge of the

14   fraudulent way the business was being conducted" with regard to

15   the four victims.  United States v. Beecroft, 608 F.2d 753, 759

16   (9th Cir. 1979) (upholding conviction of defendant).

17        Accordingly, the Court should deny defendant Tabatabai's

18   motion for acquittal pursuant to Rule 29.

19   DATED: May 15, 2011          Respectfully submitted,

20                                ANDRÉ BIROTTE JR.
                                  United States Attorney
21
                                  ROBERT E. DUGDALE
22                                Assistant United States Attorney
                                  Chief, Criminal Division
23

24

25                                _____/s/_____
                                  BRIAN E. KLEIN
26                                MONICA D. MANGE
                                  Assistant United States Attorneys
27
                                  Attorneys for Plaintiff
28                                United States of America