LAW OFFICES OF JAMES W. SPERTUS
James W. Spertus (SBN 159825)
Amanda R. Touchton (SBN 220430)
1990 S. Bundy Dr., Suite 705
Los Angeles, California  90025
Telephone: (310) 826-4700
Facsimile:  (310) 826-4711
jim@spertuslaw.com
amanda@spertuslaw.com

Attorneys for Defendant
Hamid Tabatabai

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>HAMID TABATABAI,<br><br>Defendant. | Case No. CR 10-1055 PA<br><br>**DEFENDANT HAMID TABATABAI'S SENTENCING BRIEF**<br><br>Date:         October 11, 2011<br>Time:         8:30 a.m.<br>Courtroom:  15 |

Defendant Hamid Tabatabai ("Mr. Tabatabai"), by and through his counsel of record, hereby respectfully submits his Sentencing Brief.

Dated: September 26, 2011          LAW OFFICES OF JAMES W. SPERTUS


By:     /S_____
        James W. Spertus
        Amanda R. Touchton
        Attorneys for Hamid Tabatabai

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel 310-826-4700; Fax 310-826-4711

# **TABLE OF CONTENTS**

**PAGE**

I.   INTRODUCTION ................................................................. 1

II.  PROPOSED GUIDELINE CALCULATIONS ................................. 2

   A.  A Departure Is Warranted Because the Loss Amount Overstates Mr. Tabatabai's Culpability ................................................. 3

   B.  Mr. Tabatabai is Entitled to a Four-Level Reduction for his Minimal Role in the Offense ............................................... 7

   C.  Mr. Tabatabai's Acceptance of Responsibility Warrants a Two-Level Reduction in his Guideline Sentencing Range ........................... 11

   D.  Mr. Tabatabai Requests an Additional Departure Because the Instant Offense Constituted Aberrant Behavior ..................................... 13

III. A SENTENCE OF PROBATION IS APPROPRIATE ................................. 16

   A.  Nature And Circumstances Of The Offense And The History And Characteristics Of Mr. Tabatabai ......................................... 16

     1.  Mr. Tabatabai Is Devoted to His Family ................................. 17

     2.  Mr. Tabatabai Is a Hardworking and Dedicated Professional ............. 21

     3.  Mr. Tabatabi is a Well-Respected and Much Loved Member of His Community ................................................................. 24

   B.  Just Punishment, Deterrence, Public Protection And Effective Correctional Treatment Are All Served By A Sentence Of Probation ..... 31

IV.  TERMS OF SUPERVISED RELEASE OR PROBATION ........................... 31

V.   CONCLUSION ................................................................. 31

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel 310-826-4700; Fax 310-826-4711

i.

# <u>TABLE OF AUTHORITIES</u>

<u>PAGES</u>

## <u>CASES</u>

<u>United States v. Aguayo-Gonzalez,</u>
   472 F.3d 809, 812 (10th Cir. 2007) .......................................................... 8

<u>United States v. Booker,</u>
   543 U.S. 220, 245-46 (2005) ................................................................ 12

<u>United States v. Cantrell,</u>
   433 F.3d 1269, 1283 (9th Cir. 2006) ...................................................... 5

<u>United States v. Costello,</u>
   6 F.Supp.2d 36, 39-40 (D.Mass.1998) .................................................. 4

<u>United States v. Eagleton,</u>
   131 F.3d 149 (9th Cir. 1997) ................................................................. 3

<u>United States v. Fairless,</u>
   975 F.2d 664, 667 (9th Cir. 1992) ..................................................... 9, 10

<u>United States v. Forchette,</u>
   220 F. Supp. 2d 914, 925 (E.D. Wis. 2002) ......................................... 4

<u>United States v. Gauvin,</u>
   173 F.3d 798, 806 (10th Cir. 1999) ....................................................... 8

<u>United States v. Hutchison,</u>
   22 F.3d 856, 855 (9th Cir. 1993) ........................................................... 3

<u>United States v. Jackson,</u>
   798 F. Supp. 556, 557 (D. Minn. 1992) ................................................ 4

<u>United States v. Johnson,</u>
   297 F.3d 845, 874 (9th Cir. 2002) ......................................................... 5

<u>United States v. Knight,</u>
   905 F.2d 189, 192 (8th Cir. 1990) ......................................................... 9

<u>United States v. Restrepo,</u>
   936 F.2d 661, 667 (2d Cir. 1991) ....................................................... 3, 4

<u>United States v. Schneider,</u>
   930 F.2d 555, 559 (7th Cir.1991) .......................................................... 4

<u>United States v. Takai,</u>
   941 F.2d 738, 742 (9th Cir. 1991) ......................................................... 9

<u>United States v. Wells,</u>
   519 U.S. 482 (1997) ............................................................................... 3

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel 310-826-4700: Fax 310-826-4711

ii.

## <u>OTHER AUTHORITIES</u>

18 U.S.C. § 3553(a) ..................................................................................12

18 U.S.C. § 3553(a)(1)-(7) .......................................................................12

18 U.S.C. §§ 3553(a)(2)(A)-(D)................................................................27

U.S.S.G. § 3B1.2 ...................................................................................4, 5

U.S.S.G. § 5K2.20 .....................................................................................9

U.S.S.G. §2B1.1 .........................................................................................2

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel 310-826-4700; Fax 310-826-4711

Defendant Hamid Tabatabai's Sentencing Position Paper

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Court took Mr. Tabatabai's pending Rule 29 and Rule 33 motions under submission and has yet to issue a final ruling on the motions. If the Court were to deny the motions and proceed to sentencing in this case, a sentence of probation for Mr. Tabatabai would be appropriate. The United States Probation Office has recommended probation for Mr. Tabatabai, although the Court ordered that the recommendation be submitted to the Court in camera and the parties have not seen it. However, Mr. Tabatabai is aware of the recommendation because he was interviewed by the Probation Office about his ability to comply with the terms of the recommended probationary sentence. The United States Probation Office conducted an independent investigation of this case and recommended probation, and Mr. Tabatabai respectfully submits that the sentence is appropriate under both the United States Sentencing Guidelines and Title 18, United States Code, Section 3553.

Under the Sentencing Guidelines, Mr. Tabatabai's final offense level should be either Level 1 or Level 0, depending upon whether the Court applies a 1-level reduction for aberrant conduct. Mr. Tabatabai's base offense level is Level 7, he should receive a 4-level reduction for minimal role as recommended by the Probation Officer, and he should receive a 2-level reduction for acceptance of responsibility since he readily admitted each and every fact that the government argued at trial supported a finding of guilt. Mr. Tabatabai's total offense level, absent any departures, is therefore Level 1. No enhancement for a loss amount is appropriate because loss was not foreseeable to Mr. Tabatabai, and any loss enhancement would overstate Mr. Tabatabai's culpability in this case.

With regard to departures, Mr. Tabatabai requests a departure for aberrant conduct since the government argued throughout trial that the scheme charged in this case involved only four victims among the hundreds of Namco Financial Exchange ("NFE") clients that successfully completed their exchanges. The

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel 310-826-4700; Fax 310-826-4711

1.

government argued aggressively for the exclusion at trial of evidence related to the $2 billion in exchange proceeds that were successfully processed by NFE with the exact same documents that were used for the four charged victims. The government's position at trial establishes that an aberrant conduct departure is appropriate in this case. Against the backdrop of hundreds of successful exchanges, the four "victim" clients whose exchanges were not successfully completed represent an aberration that justifies an additional 1-level departure to a final offense level of Level 0.

Mr. Tabatabai is an honest person who worked for Namco Capital Group ("NCG") for over ten years with the utmost integrity. As reflected by the 85 character letters submitted concurrently herewith, Mr. Tabatabai is a highly regarded human being, and his convictions are contrary to the uniform perception in the community, based on years of personal interaction, that Mr. Tabatabai is "honest, hardworking, and dedicated to his family." PSR at ¶ 75. Mr. Tabatabai respectfully requests that the Court sentence him to probation as recommended by the United States Probation Office.

## II.   PROPOSED GUIDELINE CALCULATIONS

Mr. Tabatabai respectfully requests that the Court calculate his Guidelines Offense level as follows:

| | |
|---|---|
| Base Offense Level: | +7 |
| Adjustment for Loss: | +0 |
| Minimal Role Reduction: | -4 |
| Acceptance of Responsibility: | -2 |
| Aberrant Behavior: | -1 |
| Total Offense Level: | 0 |

Pursuant to these calculations, Mr. Tabatabai requests that the Court sentence him to probation.

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel 310-826-4700; Fax 310-826-4711

Defendant Hamid Tabatabai's Sentencing Position Paper

**A.**   **No Increase in Offense Level Based on an Amount of Loss Is Appropriate in this Case**

The Sentencing Guidelines provide for increased punishment to reflect "the seriousness of the offense" and "the defendant's relative culpability."  U.S.S.G. §2B1.1.   The Probation Officer increased Mr. Tabatabai's Guidelines calculation by 22 levels after finding a loss amount of $20,940,456, but recognized that Mr. Tabatabai is eligible for a departure under Application Note 19(c) because the loss calculation results in a proposed sentence that is out of proportion to Mr. Tabatabai's criminal conduct and culpability.  PSR at ¶ 121.   "The Commission apparently contemplated some connection between the quantity of money implicated and the extent of a defendant's participation in the offense. . . . [A departure under Note 19(C)] is simply a recognition that when an aggravating factor is translated to a sliding scale of offense levels, the assumptions underlying that translation cannot fairly reflect every possible case."  United States v. Restrepo, 936 F.2d 661, 667 (2d Cir. 1991) (applying a departure for both minimal role and overstatement of culpability in connection with loss to warehouse workers in large drug operation).  A departure on these grounds is to be made in addition to any role related departure.  United States v. Eagleton, 131 F.3d 149 (9th Cir. 1997) (applying both a role and an overstatement of loss departure based on the defendant's relative culpability).

In addition, the Court must address whether the base offense of is even subject to an upward adjustment subject to proof of the greater of an "intended loss" or an "actual loss." U.S.S.G. § 2B1.1.  The Presentence Report acknowledges, and the government does not dispute, that there was no intended loss in this case, and thus any adjustment would have to be based on "actual loss."  An "actual loss," for

Defendant Hamid Tabatabai's Sentencing Position Paper

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel 310-826-4700; Fax 310-826-4711

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel 310-826-4700; Fax 310-826-4711

purposes of the Guidelines, "means the reasonably foreseeable pecuniary harm that resulted from the offense."[1]  U.S.S.G. § 2B1.1, Appl. Note (3)(A)(i).

The relevant question for loss purposes is whether the government can prove it was "reasonably foreseeable" that, as a result of each of the transfers of funds from NFE to NCG, NFE would be unable to complete the 1031 exchange transactions for the four clients charged as victims in the Indictment.  Reasonably foreseeable pecuniary harm is defined by Application Note 3(A)(iv) as "pecuniary harm that the defendant knew or, under the circumstances, reasonably should have known, was a potential result of the offense."  Thus, in order to establish an actual loss amount, the government must prove that Mr. Tabatabai knew, or reasonably should have known at the time he transferred the funds at issue, that a potential result would be the inability to complete the subject exchanges.  Moreover, given the extremely disproportionate effect that the loss amount would have on the guideline range in this case, the government must prove the foreseeability of pecuniary loss by clear and convincing evidence.  *See*, *United States v. Dare,* 425 F.3d 634, 642 (9th Cir.2005) (clear and convincing standard of proof applies "when a sentencing factor has an extremely disproportionate effect on the sentence relative to the offense of conviction.").

Mr. Tabatabai was not in any position to foresee pecuniary harm to NFE clients in this case.  Mr. Namvar was a billionaire with hundreds of millions of dollars in real estate holdings that he was actively selling at the time the financial markets collapsed in the Fall of 2008.[2]  *See, e.g.*, 5/12/11 RT 116:6-12 (In 2008, Mr.

---

[1] The Presentence Report ("PSR") failed to apply the reasonably foreseeable standard and simply deemed the Guideline "actual loss" to be the difference between the funds the four trusts transferred to NFE, and the funds returned. See PSR p. 12, par. 45 (supporting 22-level adjustment by stating, "the Government has provided evidence of losses of $20,940,456."). Mr. Namvar noted this in his previously filed objections to the PSR. Dkt. \*\*, pp. \*\*. As of the filing of this memorandum, no response to this objection has been received. Mr. Namvar respectfully requests the opportunity to address any response that is submitted to his objections.

[2] In the Fall of 2008, the financial markets collapsed.  On September 15, 2008, Bank of America announced its intent to purchase Merrill Lynch for $50

4.

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel 310-826-4700: Fax 310-826-4711

Namvar's interests included dozens of limited liability companies worth several hundred million dollars); 5/13/11 RT 41:11-20, 189:23-190:1; 5/17/11 RT 92:18-93:1 (Money regularly was transferred between NFE and NCG for purposes of completing exchanges, and this was the regular practice); 5/17/11 RT 122:6-8 (Since its incorporation in 2005, NFE had completed exchanges with a total value of $2 billion); 5/17/11 RT 122:17-21 (In 2008 alone, NFE completed exchanges of $160 million); 5/13/11 RT 199:4-8; 5/17/11 RT 91:17-20 (NFE had always had the funds to complete its exchanges). This evidence alone establishes that it was not reasonably foreseeable to Mr. Tabatabai that there would be any pecuniary harm to any NFE clients. *Compare United States v. Warr*, 530 F.3d 1152, 1155 (9th Cir. 2008) (costs resulting from arson were reasonably foreseeable, where the defendant "was a trained firefighter and a Montana resident who, given his statements, knew the risks of starting fires while forest restrictions were in place [and] knew or should have known costs associated with fires").

---

billion. On September 16, 2008, the Federal Reserve Board rescued AIG. On September 17, 2008, Morgan Stanley and Wachovia discussed merging. On September 19, 2008, the United States Treasury Department made $50 billion available to guarantee investments in money markets and mutual funds. On September 21, 2011, Goldman Sachs and Morgan Stanley filed for bankruptcy status. On September 26, 2011, Washington Mutual was seized by federal regulators. On September 29, 2008, the FDIC entered into a loss-sharing agreement with Citigroup on a $312 billion pool of loans. On October 3, 2008, Congress established the $700 billion Troubled Asset Relief Program (TARP). On October 13, 2008, European countries committed $1.3 trillion to bailout programs. On October 28, 2008, the United States Treasury purchased $125 billion of preferred stock in nine United States banks. On November 11, 2008, the United States Treasury, HUD, and the Federal Housing Finance Agency (FHFA) jointly announced a streamlined loan modification program. On November 18, 2008, United States car company executives from Ford, GM, and Chrysler testified before Congress and requested access to TARP loans. On November 21, 2008, the United States Treasury purchased $35.5 billion of preferred stock in 21 United States banks. On December 12, 2008, the United States Treasury purchased $6.25 billion of preferred stock in 28 United States banks. On December 19, 2008, the United States Treasury purchased $27.9 billion of preferred stock in 49 United States banks. On December 23, 2008, the United States Treasury purchased $15.1 billion of preferred stock in 43 United States banks. On December 31, 2008, the United States Treasury purchased $1.91 billion of preferred stock in seven United States banks. NFE continued to successfully complete exchanges until November 2008.

Defendant Hamid Tabatabai's Sentencing Position Paper

1   Mr. Tabatabai testified at trial that Mr. Namvar was in the process of selling
2   assets sufficient to complete the four exchanges.  The defense also proffered to the
3   Court formal assignments executed by Mr. Namvar in the Fall of 2008 that pledged
4   the assets from these real estate sales to NFE.  5/13/11 RT 6:21-25.  The assets from
5   any of these pending real estate sales would have been sufficient to complete all of
6   the subject exchanges, but the government successfully excluded the evidence from
7   the trial.  5/17/11 RT 131:23-132:17.

8   Even if the Court were to find that there was a reasonably foreseeable
9   pecuniary harm to NFE clients in this case, Mr. Tabatabai is precisely the type of
10  defendant for whom the extremely high Guideline range resulting from a high loss
11  calculation would result in a disproportionate sentence.  After facilitating over two
12  billion dollars in successful financial exchanges for NFE, Mr. Tabatabai could not
13  possibly have foreseen that NFE would, due to the collapse of the financial markets
14  in the Fall of 2008, become unable to complete the exchanges for the four NFE
15  clients charged in the Indictment.  As a salaried employee, Mr. Tabatabai stood to
16  gain nothing from the four transactions at issue, and understood them to be the same
17  or identical to the hundreds of non-fraudulent transactions that were successfully
18  completed during the same time period using the exact same form exchange
19  agreements and related documents.

20  In United States v. Hutchison, 22 F.3d 856, 855 (9th Cir. 1993), overruled on
21  other grounds by United States v. Wells, 519 U.S. 482 (1997), the Ninth Circuit
22  expressly ruled that a departure for overstatement of loss would apply where the
23  defendant had pledged collateral to secure his bank loan.  By doing so, the Court
24  recognized that the defendant in that case was less culpable than a defendant who
25  "outright steals" that same amount of money.  Like the defendant in Hutchison, Mr.
26  Tabatabai honestly and firmly believed, based on the hundreds of identical and
27  successful past NFE transactions and the relative wealth of NCG and Mr. Namvar,
28  that the NFE clients would successfully complete their 1031 exchanges.  PSR at ¶

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel 310-826-4700; Fax 310-826-4711

6.

40.  Mr. Tabatabai is not, therefore, similarly situated to "a con artist who intended to winkle $142,400 ... from a senile old lady."  United States v. Schneider, 930 F.2d 555, 559 (7th Cir.1991).

Mr. Tabatabai, moreover, "did not come up with the scheme at the outset," but, instead, followed the direction of his employer, and his relative lack of culpability provides an additional basis for the Court to depart based on the ground that the loss is overstated as to Mr. Tabatabai.  United States v. Costello, 16 F.Supp.2d 36, 39-40 (D.Mass.1998) (granting a departure for overstatement of loss in part because defendant did not orchestrate or mastermind criminal scheme); United States v. Forchette, 220 F. Supp. 2d 914, 925 (E.D. Wis. 2002) (same).  Mr. Tabatabai did not negotiate the NFE transactions or personally benefit from the transactions.  PSR at ¶ 14.  "Namvar brought in most, if not all of the clients, and was the only one who could authorize wire transfers or sign checks, with the exception of two family members, who did so when he was unavailable."  Id. Courts have recognized that, in the case of employees, there is frequently no real connection between the amount of money involved and the culpability of the defendant.  Restrepo, 936 F.2d at 667 (2nd Cir. 1991) (finding that workers at a drug warehouse were entitled to a departure because the loss amount overstated their culpability); United States v. Jackson, 798 F. Supp. 556, 557 (D. Minn. 1992) (applying Restrepo to a real estate fraud scheme where the defendant's only role was to create a false appraisal).

Mr. Tabatabai requests that the Court not increase his offense level based on loss or, if the Court were to increase Mr. Tabatabai's offense level by an amount of loss, that the Court depart downward that same number of levels because the loss amount would result in a sentence disproportionate to Mr. Tabatabai's conduct.

Defendant Hamid Tabatabai's Sentencing Position Paper

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel 310-826-4700: Fax 310-826-4711

## B.   Mr. Tabatabai is Entitled to a Four-Level Reduction for his Minimal Role in the Offense

Sentencing Guideline section 3B1.2 provides for a two or four-level reduction where the defendant is a minor or minimal participant in the criminal activity. U.S.S.G. § 3B1.2 "[A] defendant's culpability is to be measured against his co-participants, not a hypothetical 'average participant.' " United States v. Johnson, 297 F.3d 845, 874 (9th Cir. 2002). "The determination whether to apply this adjustment is heavily dependent upon the facts of the particular case." United States v. Cantrell, 433 F.3d 1269, 1283 (9th Cir. 2006) (internal quotation omitted).

Mr. Tabatabai requests that the Court adopt the Probation Officer's recommendation that his sentence be reduced four-levels for his minimal role, which was set forth in the Presentence Report as follows:

> Tabatabai's role is seen as minimal in comparison to Namvar. Tabatabai is substantially less culpable than Namvar. Tabatabai was Namvar's employee. Tabatabai was responsible for executing the 1031 agreements with the clients. Although he had on-line access to the business accounts, there is no indication that he was responsible for moving client money, or making unauthorized transactions with client money. Namvar authorized most of the transfers, and that money was used for Namvar's benefit. Therefore, the minimal role reduction has been applied.

PSR at ¶ 50.

As noted by the Probation Officer, Mr. Tabatabai had no decision making authority. Mr. Tabatabai received no benefit from the transfer of NFE funds, and since the exchange agreements between NFE and its clients expressly permitted the transfers, Mr. Tabatabai had no reason to believe there was anything unlawful about the transfers. As reflected in Application Note 4, the minimal role reduction is designed to address the inequities that would otherwise result if the least culpable

Defendant Hamid Tabatabai's Sentencing Position Paper

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel 310-826-4700; Fax 310-826-4711

1   was sentenced similarly to the more culpable.  U.S.S.G. §3B1.2, Application Note 4

2   (stating that minimal role "is intended to cover defendants who are plainly among

3   the least culpable of those involved in the conduct of a group.  Under this provision,

4   the defendant's lack of knowledge or understanding of the scope and structure of the

5   enterprise and of the activities of others is indicative of a role as minimal

6   participant.")

7        All of the NCG and NFE employees who testified at trial affirmed that Mr.

8   Tabatabai had no authority to make any expenditures or dispose of any assets.  PSR

9   at ¶ 20.   Mr. Namvar, as Chairman of the Board, CEO and CFO of NFE and

10  Chairman of the Board of Directors, President and sole shareholder of NCG,

11  allowed only himself and his immediate family members to have any authority over

12  funds or to authorize transactions or transfers of funds.  PSR ¶ 7.   Mr. Tabatabai did

13  not have signature authority over any of the NCG or NFE bank accounts, and he was

14  only the NFE controller.  Mr. Tabatabai was not a Vice-President, which the

15  government tried but failed to prove.  Rather, Mr. Tabatabai's only responsibility

16  was to serve as controller, which was nothing more than a glorified title for

17  bookkeeping.  PSR ¶ 14

18       Remarkably, the investors in NFE and NCG, many of whom have lost

19  hundreds of thousands of dollars in connection with NCG investments, have written

20  to this Court to confirm Mr. Tabatabai's minimal role in any offense.  One investor,

21  the father-in-law of one of the victims, writes to this Court: "[Mr. Tabatabai] was

22  obeying his boss and without the instruction of his boss he had no power of his own.

23  As an investor, I have noticed that he would not accept deposits, nor issue the

24  checks of Interest, nor refund whenever I asked for it.  He would run to next room

25  and ask for permission to do anything he was asked to do."  Ex. 1, Ltr. from

26  Solomon Rastegar.  Another investor, Mr. Gregory Perlman of GH Capital also

27  notes, "[i]n the 20 years I have known and done business with Hamid as controller

28  of Namco, never once did he ever make any financial decisions on his own and

Defendant Hamid Tabatabai's Sentencing Position Paper

every decision was made by Ezri Namvar." Ex. 2, Ltr. from G. Perlman.  Mr. Perlman goes on to write that "he would only take actions per Ezri's Namvar's instructions," and "he was simply a salaried employee working in one of the most difficult environments one could imagine." Id.

The Chairman of Namco's Creditor Committee describes Mr. Tabatabai's role as follows:

> My own perception of Mr. Tabatabai, as well as the perceptions of tens of other friends who had dealings with Namco, was that Hamid was neither a part of the policy setting or decision making group over there, nor was he involved in direct negotiations or reaching of agreements with Namco's clients.  He was there to implement agreements that had been reached between clients and Hamid's superiors.

Ex. 3, Ltr. from Mr. Sam Kermanian.  Mr. Alex Hakakian, also at one time the Chairman of the Creditor Committee, declared under oath, "I know that Mr. Tabatabai was not a decision maker at NAMCO, and that he was essentially an administrator.  Mr. Tabatabai was the equivalent of a highly paid assistant for Ezri Namvar." Ex. 4, Hakakian Decl. at ¶ 5.  Another investor who has worked with Mr. Tabatabai for 27 years writes as follows:  "I was always under the impression that he just worked for Ezri Namvar and acted at his direction." Ex. 5, Ltr. from Mr. Saeed Farkhondehpour.  Mr. Farkhondehpour writes further that "I was actually very surprised to learn . . . that he was listed as Vice President of Namco Exchange since any time that I would make a request of any sort, whether to deposit funds, withdraw funds or any other questions; he would always look to Ezri for direction." Id.  Joseph Ghadir, another long time investor states, "Hamid was an employee taking his marching orders from Ezri at all times." and describes Mr. Tabatabai as "a puppet employee with very small knowledge of Ezri's knifing business dealings." Ex. 6, Ltr. from Mr. Joseph Ghadir.

Defendant Hamid Tabatabai's Sentencing Position Paper

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel 310-826-4700; Fax 310-826-4711

Other business persons interacting with NCG and NFE agree with these sentiments. NCG's longtime property manager writes to the Court: "In all the years we worked with the Namvar family, I never knew Mr. Tabatabai to be a decision maker. He had no check writing or approval authority." Ex. 7, Ltr. from Ms. Robin Jordan. Mr. Mark Minsky, a competitor and customer of Namco writes: "I never saw Hamid make independent decisions acting on his own, but rather I consistently felt he was following the instructions of his Employer." Ex. 8, Ltr. from Mark Minsky. Even the former CFO of NCG writes that Mr. Tabatabai "was always simply executing the instructions of Ezri as Ezri made all business decisions for Namco Capital and exercised all authority for Namco. The only delegation of authority was to the other members of the Namvar family." Ex. 9, Ltr. from Greg Johnson.

Mr. Tabatabai's role, therefore, was substantially subordinate to Mr. Namvar's at all times, and Mr. Tabatabai respectfully requests that the Court adopt the four-level downward adjustment recommended by the Probation Officer.

## C. **Mr. Tabatabai Should Receive a Two-Level Reduction in his Guideline Sentencing Range for Accepting Responsibility**

Mr. Tabatabai should receive a two-level reduction for acceptance of responsibility pursuant to Section 3E1.1. Mr. Tabatabai testified at trial and readily admitted each and every fact that the government argued supported findings of guilt on the counts of conviction. Specifically, Mr. Tabatabai readily admitted that he had signed the exchange agreements and that he was aware that the money was transferred from NFE to NCG. The facts that the government advanced in support of its theory of guilt were these:

> 1. Mr. Tabatabai was well-educated;
>
> 2. Mr. Tabatabai had an office next to Ezri Namvar and Ezri Namvar's father;
>
> 3. Mr. Tabatabai signed all exchange agreements;

11.

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel 310-826-4700; Fax 310-826-4711

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel 310-826-4700; Fax 310-826-4711

4.     Mr. Tabatabai knew of the association of Federal Exchange Accommodators;

5.     Mr. Tabatabai knew of both Namco Capital Group and Namco Financial Exchange;

6.     Mr. Tabatabai had online access to NCG and NFE bank accounts, and checked the balances regularly;

7.     Mr. Tabatabai knew how much would be transferred from NFE to NCG and then from NCG to NFE.

By readily admitting all facts that supported the government's theory of guilt, Mr. Tabatabai accepted responsibility for what he did, and he is entitled to the 2-point reduction in offense level for that acceptance of responsibility.

In United States v. Gauvin, 173 F.3d 798, 806 (10th Cir. 1999), the appellate court upheld the district court's application of a two-level reduction for acceptance of responsibility where the defendant admitted his criminal conduct in testimony at trial, but disputed whether he had the necessary *mens rea*. The key, according to a later decision, was that the defendant in Gauvin admitted to all of the facts pertaining to the crime, disputing only the legal element of intent.  United States v. Aguayo-Gonzalez, 472 F.3d 809, 812 (10th Cir. 2007).  Likewise, Mr. Tabatabai did not dispute at trial any of the facts that the government argued supported a finding of guilt, and therefore Mr. Tabatabai should receive the reduction in offense level for acceptance of responsibility.  The Probation Officer described Mr. Tabatabai's state of mind as follows:

The defendant noted that he is very sorry for the four victims that lost money.  He is extremely remorseful, even though he did not take their money or intend for them to suffer any loss.  He never intended to lie or cheat the victims in any way.  The company had previously handled hundreds of successful transactions.  Namvar had entered into numerous sale contracts, and if these had successfully closed, the

12.

victims would have gotten all of their money.  The defendant fully

believe that the victims would get all of their money back.

PSR at ¶ 40.  <u>United States v. Knight</u>, 905 F.2d 189, 192 (8th Cir. 1990) (holding

that a defendant may receive a two-level reduction for acceptance of responsibility if

he demonstrates responsibility for the offense).  Mr. Tabatabai, therefore,

respectfully requests the Court apply a two-level reduction for acceptance of

responsibility.

### D.    Mr. Tabatabai Requests an Additional Departure Because the Instant Offense Constituted Aberrant Behavior

Based on the above calculations, Mr. Tabatabai is hopeful that the Court will

find his total offense level to be Level 1 before considering departures.  With regard

to departures, the Court should remember the many impassioned arguments by the

government during trial that the charged scheme was a scheme to defraud only four

victims, not the hundreds of other NFE clients who successfully completed their

exchanges using the exact same form agreements.  (5/13/11 RT 121:19-122:5

(AUSA Monica Mange:  "And the Government's been very, very edited in the way

it's presented its case to look at that, just to look at that specific fraud.")  Since the

government successfully argued for the exclusion of evidence of the hundreds of

successful exchanges, the government laid the perfect foundation for an aberrant

conduct departure for the four "fraudulent" exchanges at issue because those four

incidents were isolated, singular incidents that  represent a marked deviation from

Mr. Tabatabai's otherwise law abiding life.  U.S.S.G. § 5K2.20.  "A single act of

aberrant behavior may be a mitigating circumstance justifying a downward

departure from the applicable Guideline range."  <u>United States v. Fairless</u>, 975 F.2d

664, 667 (9th Cir. 1992).  "In determining whether an offense constitutes a single

act of aberrant behavior, the reviewing court looks to the totality of the

circumstances."  <u>Id</u>.  In <u>United States v. Takai</u>, 941 F.2d 738, 742 (9th Cir. 1991),

the court held that the departure is not limited to conduct consisting of a single act,

Defendant Hamid Tabatabai's Sentencing Position Paper

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel 310-826-4700; Fax 310-826-4711

but acknowledged that "there is an 'aberrant behavior spectrum' in terms of which aberrant behavior is to be determined."   The Ninth Circuit, in U.S. v. Fairless, 975 F.2d at 667, used a variety of factors to evaluate whether the defendant's behavior qualified as aberrant under the Guidelines.  Among these, the Court considered whether it was the defendant's first criminal offense, the specific pressure the defendant may have been facing, and whether the defendant produced evidence, in the form of character reference letters or otherwise, that the action was out-of-character for the defendant.

Mr. Tabatabai's conduct falls within this "aberrant behavior spectrum."  The instant offense is Mr. Tabatabai's first encounter with the criminal justice system during an otherwise law abiding life.  The conduct at issue consisted of four transactions among hundreds that the government argued were not fraudulent, even though those other transactions used the exact same transactional documents and methodology as the four purportedly fraudulent transactions.  Mr. Tabatabai's function was ministerial, and he received nothing from the four transactions.  Notably, the transactions also failed to close during the worst financial collapse in United States history.

The criminal conviction in this matter constitutes an extreme break from Mr. Tabatabai's long history of being a law abiding, honest, and valuable member of his community as reflected in the over eighty character reference letters filed concurrently with this Sentencing Brief that remark without exception on Mr. Tabatabai's good character.  The letters from Mr. Tabatabai's family, friends, co-workers, and third-party investors all proclaim that any fraudulent acts were: "totally out of character for the Hamid that I have known intimately for over 40 years."  Ex. 10, Ltr. from Abbasgholi Bayat.  "To say that the crimes that my dad has been accused of are out of character for him would be a gross understatement," writes Mr. Tabatabai's son, Ex. 11, Ltr. from Ramin Tabatabai, and Mr. Tabatabai's wife concludes that she would have been "less shocked if someone had told me Hamid is

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel 310-826-4700: Fax 310-826-4711

14.

a woman, after all these years of marriage . . . Our entire community is in great disbelief."  Ex. 12, Ltr. from Fataneh Tabatabai.  Friends, community members and even investors agree.  Ex. 13, Ltr. from Brian Boots (writing to the court that he is "quite stunned to hear of [Mr. Tabatabai's] conviction."); Ex. 14, Ltr. from Justin Dargahi (writing that he is "shocked to hear about the conviction."); Ex. 15, Ltr. from Rami Shaarawy, M.D. (writing that he is "shocked because the conviction and its implications are completely out of character"); Ex. 16, Ltr. from Andre Haftvani (expressing how, after learning of Mr. Tabatabai's conviction he was "confused . . . certain that he was joking . . . because . . .  [it is] simply too far out of his caring and loving character."; Ex. 17, Ltr. from Farzin Espahani (expressing that she was "in shock for days since it was very out of character."); Ex. 18, Ltr. from Shahram Elyaszadeh) (stating that he was "shocked" by the conviction because criminal conduct is "completely uncharacteristic" and "completely out of character" for Mr. Tabatabai; Ex. 19, Ltr. from Malak Shirkhani (describing to the court that Mr. Tabatabai's conviction is "beyond [his] comprehension . . . not digestible"); Ex. 20, Ltr. from Afsaneh Movahedi Bayat (writing that he was "shocked, but also grief-stricken" after learning of Mr. Tabatabai's conviction);  Ex. 21, Ltr. from Hilda Bayanfar (remarking that criminal conduct is "totally out of his character."); Ex. 22, Soheila Noakhtar (describing criminal conduct by Mr. Tabatabai as "unfathomable for me to imagine."); Ex. 5, Ltr. from Saeed Farkhondehpour (describing his reaction as "simply shocked."); Ex. 9, Ltr. from Greg Johnson (writing that he was "astounded" by Mr. Tabatabai's conviction) Ex. 23, Ltr. from Alpha Giles (writing that she found the conduct "totally unbelievable" and "out of character, an isolated blemish that in no way defines the man as a whole.").

Based upon a totality of the circumstances described above, the criminal convictions represents aberrant behavior by Mr. Tabatabai warranting a departure. If the Court finds that Mr. Tabatabai's adjusted offense level is Level 1, then a 1-level departure for aberrant behavior would be appropriate.  If the Court finds that

Defendant Hamid Tabatabai's Sentencing Position Paper

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel 310-826-4700: Fax 310-826-4711

Mr. Tabatabai's offense level is Level 43, then a 43-level departure for aberrant conduct would be appropriate. Regardless of Mr. Tabatabai's ultimate offense level as determined by the Court, a downward departure to Level 0 would be appropriate under the facts and circumstances of this case.

## III.   A SENTENCE OF PROBATION IS APPROPRIATE

Completely separate and apart from determining Mr. Tabatabai's ultimate offense level, the Court may apply a variance after considering a broad range of sentencing purposes, along with the advisory United States Sentencing Guidelines. United States v. Booker, 543 U.S. 220, 245-46 (2005). These statutory purposes are delineated in 18 U.S.C. §§ 3553(a), 3582(a) and 3661, and pursuant to these statutes the Court will impose a sentence sufficient, but not greater than necessary, to achieve the goals of sentencing. See 18 U.S.C. § 3553(a). In fashioning an appropriate sentence, the Court will evaluate a myriad of factors in relation to the facts of the case. See 18 U.S.C. § 3553(a)(1)-(7). Several of these factors – set within the context of Mr. Tabatabai's case – are discussed below, and based on these factors a sentence of probation would be appropriate as recommended by the United States Probation Office.

### A.   Nature And Circumstances Of The Offense And The History And Characteristics Of Mr. Tabatabai

As discussed above, Mr. Tabatabai was a very minimal participant in the conduct underlying the criminal conviction, and there is little need for retribution in this case. As an employee of Mr. Namvar, Mr. Tabatabai had no authority to transfer or disburse NFE client funds. PSR at ¶ 14. Mr. Tabatabai never received any of the clients' funds and did not personally profit in any manner from his role in the offenses charged in the Indictment. Mr. Tabatabai is a respected community member who has, in every respect, been honest and honorable. Mr. Tabatabai never intended for the NFE clients to lose money, and at all times he trusted that Mr. Namvar and NCG had sufficient funds to honor all contractual obligations. The

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel 310-826-4700: Fax 310-826-4711

16.

more than eighty character letters submitted with this brief reflect that Mr. Tabatabai is not a danger for recidivism, and that a sentence of probation will be sufficient to ensure the safety of the community.

### 1.   Mr. Tabatabai Is Devoted to His Family

In 1979, Mr. Tabatabai escaped from Iran with his wife, young children, and his father-in-law.  PSR at ¶ 72.  Mr. Tabatabai wife of 38 years describes her husband as "the most caring, loving, generous, honest person I have ever met in my life." Ex. 12, Ltr. from Fateneh Tabatabai.  Together, Mr. Tabatabai and his wife cared for both of Mr. Tabatabai's parents and his sister during the last years of their lives.  Id.; PSR at ¶ 69.   Mrs. Tabatabai writes of his grace during this period of time, and of how he "would always lend a helping hand to anyone in need, even through the days we were struggling to make a living." Id.  Mrs. Tabatabai believes that "because of his high moral values, now our two children carry on the legacy of helping others with great compassion, as medical doctors, helping mostly needy people, traveling to places like Haiti, Ecuador, and South Africa to volunteer their services." Id.

Ramin Tabatabai, Mr. Tabatabai's son, is an emergency room physician who writes to the Court that his father is "the most ethically pure human being I have ever encountered," and describes Mr. Tabatabai as "selfless to the core . . . . honest, hard-working and loyal." Ex. 11, Ltr. from R. Tabatabai.  Until this trial, Ramin Tabatabai had never heard "somebody describe [Mr. Tabatabai] negatively." Id. Sendur Sellakumar, an investment banker, writes to support Mr. Tabatabai:  "I find the best tangible examples of his love, support and strong moral compass to be his two children, Ramin and Roya.  Through his efforts, he has guided his children to be college graduates and today, medical doctors, providing tangible benefits to the community.  They both exemplify the traits that are inherent in Hamid-to be a warm and caring individual inherently motivated by helping others around them, with

frankly, little to no focus on their own interests." Ex. 24, Ltr. from Sendur Sellakumar.

Brian Boots, Mr. Tabatabai's nephew, writes to this Court that his uncle is a "truly generous and compassionate individual" who "did not hesitate to sacrifice his home as a comfortable place where my grandfather could spend his final days." Ex. 13, Ltr. from B. Boots. Another nephew, Kavian Boots, who works as a managing director in the loan department of a large bank, describes his uncle as "a man of strong moral fiber and is dedicated to his family." Ex. 25, Ltr. from K. Boots. Mr. Boots notes that he has had experience dealing with fraudulent persons through his role as a bank employee, and emphasizes that:

> Hamid does not fit the characteristics of those people. They typically own their own businesses, have big egos, are desperate, and live lavish lifestyles, which they can't sustain. Hamid has worked hard his whole life to support his family and raise his children with strong values. He is modest in both his attitude and lifestyle, and most importantly, kind in his heart.

Id. An uncle, who has known Mr. Tabatabai his entire life, describes Mr. Tabatabai as "the quintessential image of integrity and honesty. I express this without any reservation or hesitation." Ex. 26, Ltr. from Amir Dowlatshahi.

Many of the letters submitted concurrently herewith describe Mr. Tabatabai's care and commitment to his father-in-law, mother and sister during the last days of their lives. "Amongst the multitude of reasons that I respect Hamid one specific incident stands out; his emotional support and commitment to his ailing father-in-law and wife over ten years prior to his most recent passing. Hamid behaved with an integrity and sense of pride as though he were his biological son." Ex. 27, Ltr. from Essi Shilati. Malak Shirkhani writes: "His patience in taking care of three family members; his father in law, his mother and his only sister who all passed away in his house was amazing. They all were so dependent upon his kindness,

trustiness, dedication, sacrificing, generosity, loyalty, and unconditional love during their life and their last moments." Ex. 19, Ltr. from Malak Shirkhani.; Ex. 28, Ltr. from Mohamed Mahajer Iravani ("Hamid is one of the most caring and self-sacrificing family men that I have ever known. He has unselfishly devoted years to his father, mother and sister during their long and hard battles with life-ending illnesses.") Dr. Mehdi Moghimi, who has known Mr. Tabatabai for over 40 years describes Mr. Tabtabai's care for these infirm family members as follows:

> Hamid has devoted his energy to taking care of elder members of the family and those suffering from illness or need support and care. In addition to taking care of his own parents, who suffered from cancer and Alzheimer, his mother-in-law who dealt with advance cancer, and his sister who passed away from cancer, Hamid also acted like a son to his father in law (our Uncle Reza) who recently passed at the age of 95. Uncle Reza relied on Hamid more than his own son and loved him just the same . . . . He is the backbone of the family. Elders rely on his commitment and care, younger members of the family look up to him as a role model and almost everyone counts on his friendship and big heart.

Ex. 29, Ltr. from Mehdi Moghimi, M.D. see also Ex. 30, Ltr from Stephen Saeed Nourmand (recognizing Mr. Tabatabai's care of his elderly family members).

Mr. Tabatabai's generous character is also reflected in the letters from his cousins. Mr. Noushin Dowlatshahi, a Raytheon Missile Systems Engineer, describes his cousin as "the epitome of love, loyalty, selflessness, responsibility, intelligence and hard work." Ex. 31, Ltr. from N. Dowlatshahi. According to Mr. Dowlatshahi, Mr. Tabatabai is someone who holds to "the highest standard of personal integrity, honesty and wisdom . . . a sharp and conservative individual whom I trusted with any type of life decisions; a responsible man who would rather walk back and for an hour in order not to risk being cited for a traffic ticket." Id.

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel 310-826-4700; Fax 310-826-4711

19.

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel 310-826-4700: Fax 310-826-4711

Another cousin writes to the Court that Mr. Tabatabai is "one of the most loving, dedicated, trustworthy, hardworking and amusing people I have ever met in my life,"  and emphasizes the dedication and strength of character Hamid displayed upon taking care of his in-laws, his own mother and his younger sister on their deathbeds in his own home.  Ex. 32, Ltr. from Marjaneh Moghimi.   See also Ex. 33, Ltr. from Giti Jomehri (same); Ex. 34, Ltr. from Shain Esmaili (same); Ex.35, Ltr. from Mina Mirkazemi (same); and Ex. 36, Ltr. from Mehdi Tabatabai (same).

Ms. Reza Goharderakhshan, a urologic oncologist, says of her cousin who she has known for over 30 years, "Hamid is a man of great integrity and is dedicated to his family, friends and community . . . I have known him to be down-to-earth, trustworthy and compassionate.  He has always volunteered to help anyone in need even during difficult times."  Ex. 37, Ltr. from R. Goharderakhshan.   A younger cousin writes to this Court: "He is one of my family members that I have come to love and confide in like a father.  He is not only a devoted family man, loving husband and friend but also an extremely hardworking, generous, kind and trustworthy man."  Ex. 38, Ltr. from Salmeh Moghimi.  Ms. Karin Sanati, a systems engineer who has known Mr. Tabatabai for 28 years describes her cousin as "an honest professional, trustworthy, considerate, caring and compassionate man of highest integrity and a committed, loyal and devoted husband and father.  I have seen nothing but dedication, kindness, honesty, concern and respect towards everyone, whether family, friend, acquaintance or stranger.  He is an amazing brother, cousin and friend."  Ex. 39, Ltr. from K. Sanati.

Mr. Phil Boots, a business owner and Indiana State Senator, describes his brother-in-law as "extremely honest and forthcoming in our relationship . . . [someone who] always demonstrated a high moral character."  Ex. 40, Ltr. from P. Boots.  He continues: "My experiences with Hamid show that he is very cognizant of the rights of others and will go the extra mile to defend those rights."  Id.  A former sister-in-law writes from South Africa that she has known Mr. Tabatabai for

43 years and has "never known Hamid to engage in any dishonest activity.  Indeed, that would be against his very nature."  Ex. 41, Ltr. from Marina Rose Tod.  Farzin Tabatabai, Mr. Tabatabai's eldest brother, describes him as "a supreme model of an honest professional dedicated to performing his work to the best of his ability and one of the greatest husbands and fathers I have known."  Ex. 42, Ltr. from F. Tabatabai. see also, Ex. 43, Ltr from Farzaneh Boots (describing Mr. Tabatabai's hard work and caring nature).

As is reflected by these letters, Mr. Tabatabai is a committed family man who has spent his life caring for those around him.

### 2.    Mr. Tabatabai Is a Hardworking and Dedicated Professional

Mr. Tabatabai is a well-known, loved and respected member of the Los Angeles professional community.  Numerous letters are submitted in connection with this Sentencing Position Paper that reflect his excellent reputation and the high esteem in which his colleagues, from executive assistants to CFOs, hold him.

Mr. Bijan Ramineh, who was the outside CPA for NCG and who has known Mr. Tabatabai for over 20 years writes:

> I can categorically claim that he is one of the select few individuals
> that is the most honest, truthful and decent a person that one would
> have the privilege to know him.  As controller of the aforementioned
> corporations, he had always been most truthful and honest with the
> financial information and relevant data provided to me for the
> preparation of the annual corporate and partnership income tax returns
> and not once has he misled me.  Moreover, he has always accepted
> my interpretation of the laws as applied to the tax rules . . . .even
> when they were unfavorable and detrimental to the entities concerned.

Ex. 44, Ltr. from B. Ramineh.  Hilda Bayanfar, another long time co-worker explains her experience with Mr. Tabatabai as follows: "I found him to be very dedicated, industrious professional and ethical…the accounting advices that I got

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel 310-826-4700; Fax 310-826-4711

21.

from him were always precise and accurate…lying or cheating is totally out of his character." Ex. 21, Ltr. from H. Bayanfar.   Ramin Tabib, who worked in a nearby cubicle at a NCG company describes Mr. Tabatabai as remarkably honest.  "I have not once in many years heard him lie.  Always truthful, always trustworthy and always forthright, he was always the go-to-person to get the honest answer on any matter."  Ex. 45, Ltr. from R. Tabib.  Mr. Tabib continues: "if I were running a business or needed an honest financial expert, I would pay whatever he demanded so he could work for me."  Id.

Vivianne Nalangan, who has worked with Mr. Tabatabai for ten years, describes him as her "mentor" and "father figure" to her, both professionally and personally.  According to Ms. Nalangan, Mr. Tabtabai is a "dedicated, loyal, honest and an intelligent person.  He exudes a sense of purity and transparency that when you are in his presence, you will feel that you are dealing with an honest to goodness true person . . . . I can say this is the same impression that my co-workers have for Hamid.  We all have the same respect and admiration for him."  Ex. 46, Ltr. from V. Nalangan.  see also Ex.47,  Ltr. from Madellynn P. Agoncillo (describing Mr. Tabatabai as her teacher and mentor), Ex. 48, Ltr. from Marica Insigne De Jong (describing his assistance and guidance).

Alpha C. Giles, former executive assistant of NCG says, "Hamid easily stood out as the most honest, caring and kindhearted [person].  I even recall Hamid always being sure to pay for his personal mail separately, as to not use company postage. . . . . He worked tirelessly, was always the first to arrive and the last to leave.   He cares deeply for his family and those around him."  Ex. 23, Ltr. from A. Giles.  Greg Johnson, former CFO of NCG describes Mr. Tabatabai as "very well liked, respected and trusted by all that he worked with including real estate partners, lawyers, lenders to Namco Capital, fellow employees, etc.  I found Hamid to be truthful and honest in all my dealings with him and observed the same in his

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel 310-826-4700; Fax 310-826-4711

22.

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel 310-826-4700: Fax 310-826-4711

dealings with others.  Many sought Hamid's counsel in both business and personal issues."  Ex. 9, Ltr. from G. Johnson.

Sohelia Noakhtar, an employee at Pacific Western Bank, worked with Mr. Tabatabai for 10 years and writes to this Court: "Hamid's sense of integrity, his honesty and work ethics are none like other. . . .  He can only be described as a genuinely good person who cannot help but be decent and generous with his time, money and kindness."  Ex. 22, Ltr. from S. Noakhtar.  David Norouzi, an attorney and real estate broker, who has also worked with Mr. Tabatabai for over 20 years reports that he is "extremely trustworthy, honorable, moral and forthright.  Hamid was consistently honest and made full disclosures regarding all the transactions I negotiated against him.  For example, if there was a negative or adverse issue with a collateral he would always disclose it to me.  Additionally, if something was inadvertently incomplete or erroneous after execution of the documentation, Hamid would always be willing to rectify the error, consistent with our understanding or conversations, even if the correction resulted in an economic loss to his employer.  Simply stated, Hamid's honesty and integrity is unique and exemplary."  Ex. 49, Ltr. from D. Norouzi.

Fara Raban, a real estate broker, investment advisor and consultant describes Mr. Tabatabai as an honest professional and true friend, "in my professional relationship with Hamid over the years, I never, ever saw anything but an honest and professional controller and great human being on every deal and every day that we were working together… he has such strength of character and is an incredible honest man."  Ex. 50, Ltr. from F. Raban.  Robin Jordan, the property manager for NCG's properties worked closely with Mr. Tabatabai and writes to this Court: "I always knew him to be extremely honest and a man of integrity, ensuring that things were done right. . . .   I have always found him to be concerned for others and to conduct himself morally and ethically, both professionally and personally."  Ex. 7, Ltr. from R. Jordan.  Jordan further describes Mr. Tabatabai as "a genuinely honest,

Defendant Hamid Tabatabai's Sentencing Position Paper

moral and caring person, someone who gives unselfishly to his community, a wonderful family man and a positive member of society." Id. see also Ex. 51, Ltr from Tony Namvar (recognizing Mr. Tabatabai's honesty, decency and fairness).

Even the various investors, many of who have lost small fortunes investing with Mr. Namvar, speak highly of Mr. Tabatabai. Sam Kermanian, Chairman of the Creditor's Committee and an investor, describes Mr. Tabatabai as "an extremely honest and conscientious employee who worked hard to ensure that Namco's clients were always treated fairly and equitably." He continues, "it is extremely difficult for me to imagine that Hamid Tabatabai, an honest, hard working, family man, who was merely following company policies that had been in place for years . . . was knowingly engaged in any illegal acts." Ex. 3, Ltr. from S. Kermanian. Saeed Farkhondehpour, another investor, who has known Mr. Tabatabai for 27 years, describes him as "a very honorable man, helpful, and a pleasure to work with." Ex. 5, Ltr. from S. Farkhondehpour.

Mr. Tabatabai's current employer, a securities lawyer and owner of a finance company, praises Mr. Tabatabai as a "fantastic employee," with an "excellent work ethic." Ex. 52, Ltr. from Reid Breitman. He writes: "We love Mr. Tabatabai, and we hope he will continue to work for us for a very long time. Mr. Tabatabai is exceptionally honest. He has had access to cash payments received by customers, as well as access to our bank account information, and he has never abused these privileges. . . . I trust Mr. Tabatabai completely." Id. This letter was written to the Court will full knowledge of the allegations and of Mr. Tabatabai's conviction. As the many letters reflect, Mr. Tabatabai is a man of honesty and integrity, and a sentence o probation would accomplish all of the goals of sentencing.

### 3.    Mr. Tabatabi is a Well-Respected and Much Loved Member of His Community

Mr. Tabatabai's community support is overwhelming; he is uniformly recognized as a caring, committed and honorable person. Letter after letter

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel 310-826-4700; Fax 310-826-4711

24.

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel 310-826-4700: Fax 310-826-4711

addressed to this Court remarks on Mr. Tabatabai's honesty and his willingness to assist a friend in need.  Mitra Feyz, a friend of 40 years, describes Mr. Tabatabai as, "a respected member of our cultural community; people look up to him and seek his advice.  For these reasons it is hard for me to believe that Hamid Tabatabai stands accused of defrauding anyone for any reason because he has such strength of character, integrity and honesty in his approach to life."  Ex. 53, Ltr. From Mitra Feyz.   Another friend of over 40 years, Mr. Shirzad Bozorgmehr, writes from Iran: "I felt, as I still do, that I could trust him with my life . . . . I plead with you to consider Hamids' proven excellent character, his selfless contributions to the welfare of his circle of friends and relatives, as well as to the community at large in the past decades."  Ex. 54, Ltr. From Shirzad Bozorgmehr.  Soussan Raadi-Azarakhci, from Geneva, Switzerland, has also known Mr. Tabatabai for over 40 years and describes him as "a model of integrity and honesty," and someone who has "spent a lifetime in caring for his family and friends and has earned a reputation for honesty and hard work."  Ex. 55, Ltr. from S. Raadi-Azarakhci.  Mohsen Sohrabi, also from Geneva, Switzerland, describes Hamid as, "a highly principled person, a model of rectitude and decency.  In the face of adversity…he has always been a humane and courageous person."  Ex. 56, Ltr from Mohsen Sohrabi.  see also Ex. 57, Ltr. from Bijan Movahedi (writing from Belgium regarding Mr. Tabatabai's integrity).

Although Mr. Tabatabai is of the Muslim faith, he has worked faithfully and honestly for Mr. Namvar's investors, many of whom are Jewish.  The letters submitted herewith reflect that the community's respect for Mr. Tabatabai crosses all religious boundaries.  Masoud Moradzadeh, notes this issue in his correspondence and writes that Mr. Tabatabai is "a compassionate, honest and straightforward individual both in his social and professional life . . .  an individual with impeccable integrity and honor. . . .  I am convinced that Hamid does not have

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel 310-826-4700: Fax 310-826-4711

a bone in his body capable of conducting acts he has been accused of." Ex. 58, Ltr. from M. Moradzadeh.

Alan Modarressi, Ph.D., a clinical and forensic psychologist has known Mr. Tabatabai for over 30 years and writes to the Court that Mr. Hamid's reputation as a professional and a friend is unblemished:

> In my capacity as a forensic psychologist I often see people who are less than honest and by experience I know them when I see them. I can tell you earnestly from the bottom of my heart, both as a professional and as friend, that Hamid is not a liar or a cheater. Rather, he is a man of character, integrity, and compassion. He is a dedicated family man and a hardworking citizen who is loyal and ethical. He is loyal to his wife, his children, his friends and his profession.

Ex. 59, Ltr. from Alan Modarressi, Ph.D. Minoo Shilati, a practicing psychotherapist, describes Mr. Tabatabai as follows:

> His devotion and kindness to the people in his life was simply unheard of. 'No' was not part of his vocabulary when it came to helping others. . . . Hamid is a very special friend and his honesty and sincerity were the primary reasons I hired him as an accounting consultant for our company…he helped our new company tremendously. . . . I trust Mr. Hamid Tabatabaee with my family and finances anytime. I am genuinely honored to know him.

Ex. 60, Ltr. from Minoo Shilati.

Afsaneh Movahedi Bayat chose Mr. Tabtabai to be the legal guardian for her children in the event of her death. She describes Mr. Tabatabai as "one of the kindest and, without a doubt, the most trustworthy person that we know." Ex. 20, Ltr from Afsaneh Bayat. Mr. Tabtabai's reputation, as described by another friend of over 50 years, is as "one of the most reliable, compassionate and ethical people"

26.

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel 310-826-4700; Fax 310-826-4711

in the community.  The friend went so far as to tell her child, "should anything happen to me, [you] can count on Hamid as [you] would a father."  Ex. 61, Ltr. from Homayoun Pourmand.  These sentiments are reflected in multiple letters submitted to this Court.  See e.g. Ex. 10, Ltr from Abbasgholi Bayat ("My level of trust in Hamid and his wife is so high that my daughters, even at a young age, were allowed to visit and stay with them by themselves.  I have always had total trust in Hamid.").

Many of the letters include personal anecdotes of how Mr. Tabatabai went out of his way to benefit his community.  Gina Alexander, who has known Mr. Tabtabai for 50 years, describes him as a "generous person with his time, profession guidance and assets if necessary."  Ex. 62, Ltr. from Gina Alexander.  She writes of the assistance he provided to her after the 1994 Northridge earthquake destroyed her business and home as follows: "Hamid was the first person to rescue me and my 86 year old father by donating financial assistance and his expertise."  Sharzad Zafari, a friend of over 25 years describes Hamid as "closer to me than my own brother" and describes an incident "when I had a very serious car accident and the first person I contacted was Hamid.  He left a very important family gathering and rushed to help me at the accident scene."  Ex. 63, Ltr. from Sharzad Zafari.

Lily Bayat, describes how, when she was a young girl taking a class in San Diego and far from her home in Belgium, Mr. Tabatabai found out she was sick and "he brought me to a doctor, made me fresh artichoke soup and took care of me for the next week until my health improved as if I was his own daughter.  Indeed, during that time, he felt like a second father to me."  Ex. 64, Ltr. from Lily Bayat.  Mahasti Sadighi describes how, when her best friends died in a tragic accident leaving two young daughters behind, "Hamid Tabatabai was one of the first ones to be a support for the two girls and every one that was affected in this tragic incident."  Ex. 65, Ltr. from Mahasti Sadighi.   Mazaheri Kermani describes how "Mr. Tabatabai and his wife gave me shelter in their home and with great generosity, without expecting anything in return, supported me in every way possible until I

could get back on my feet.  His charitable acts, good deeds, and generosity as a human being have not been limited to me or this act alone." Ex. 66, Ltr from Mazaheri Kermani.

Even someone who has only known Mr. Tabatabai for eight years views him as "my friend whom I've come to love like a brother," and describes him as "a man whose only intentions are to support his family, be a pillar of his community and help others when in need.  His unquestionable integrity, selflessness and sense of dignity have afforded him the opportunity to raise two professional medical practitioners who will undoubtedly also carry on his legacy into the larger community." Ex. 67, Ltr. from Amir A. Ghavami.  Mr. Aaron Rivani, who has known Mr. Tabatabai in both a personal and professional capacity writes that Mr. Tabatabai is:

> [A] peace-loving, hardworking and honest man who loves his family very dearly.  There have been no complaints against him that I know or heard of in the Persian community to which we are both members .
> . . . every time I speak about Hamid before a group of people, everybody has high regards and talked great things on what he has done or contributed to the community being an active participant of it
> . . . . many who know him have witnessed his immense principles in life that he religiously follows.

Ex. 68, Ltr from Aaron Rivani.

A number of letters come from friends of Mr. Tabatabai's children, all professionals, who credit some portion of their success to the support and direction they received from Mr. Tabatabai.  Loulay Keilani, Chief Resident at Children's Hospital of Los Angeles, who has known Mr. Tabatabai for 20 years writes:

> Hamid has become like a father to me . . . . I trust him completely and that is because he has always lived his life with complete integrity. . . .
> If not for Hamid, I truly believe that Ramin [Tabatabai's son] and I

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel 310-826-4700; Fax 310-826-4711

28.

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel 310-826-4700: Fax 310-826-4711

would not be physicians . . . .The way he values family and friends over financial gains, makes it hard for me to believe he would mislead anyone.  He is one of the few people in my life that has taught me this lesson, something I find invaluable.

Ex. 69, Ltr. from Dr. Loulay Keilani.  Andreh Haftvani describes Mr. Tabatabai as "one of the most generous and kind-hearted men I have ever known . . . . Hamid played a father role whenever he was around and went far beyond what was required of him as the father of a friend, he treated us all like his sons . . . You could always count on Hamid to be honest with you and to help guide you to a better choice."  Ex. 16, Ltr. from Andreh Haftvani.  Mr. Haftvani goes on to state, "I have been around the world, served in the U.S. Navy, built my own businesses, . . . served as a Rotary Ambassadorial Scholar in South Africa . . . . I have been blessed to meet many people and to have a wide range of experiences with all sorts of persons.  That is one of the reasons it is particularly hard for me to believe that the crimes Hamid has been convicted simply because he is one of the most honorable people I have ever known."  Id.; see also Ex. 70, Ltr. from Rami Shaarawy, M.D ("Mr. Tabatabai has always been a remarkable man whose love and support for his family is nothing short of incredible….Mr. Tabatabai is a man of integrity, full of family values, and someone that I will always hold in high regard.").

Tim Kuruvilla, co-founder and President of a software company states, "Over the last 14 years, I have had the pleasure of experiencing unending generosity, sincerity, and integrity from Hamid. . . . Hamid is one of the few individuals you come across in life with a truly selfless and sincere soul." Ex. 71, Ltr. from Tim Kuruvilla.  Naren Chelian, an orthodontist, describes Mr. Tabatabai as someone I would consider as part of my own family, "some of his strongest values include loyalty, humility and a strong work ethic…. Throughout the entire time that I have known him, he has not once placed the slightest value on money and he has been one of the most humble people I know.  Ex. 72, Ltr from Dr. Naren Chelian.

Defendant Hamid Tabatabai's Sentencing Position Paper

Maryam Bayat, who has known Mr. Tabatabai her whole life, describes her relationship with him as follows:

> Although we are not related by blood, I consider him, his wife and his two children to be my family.  In a way though, they are better than family because my bond with them is forged out of deep affection, respect and choice rather than necessity or genetics.  To me, Hamid has always been a kind, trustworthy and thoughtful uncle figure who has stood out in my life as one of the very few people I know who is genuinely good to the very marrow of his bones….there is nothing that I value that I would not entrust to him.

Ex. 73, Ltr. from Maryam Bayat.

The depth and strength of emotion that Mr. Tabatabai generates in his community is best reflected in two letters, written to this Court by longtime friends and community members.  Mr. Kian Shirdel writes to this Court: "I find it difficult to summarize Hamid's character in a simple letter.  Not because there are no words to describe the man, but because if I chose all the right words, most people would believe I was writing about a fictional character."  Ex. 74, Ltr. from Kian Shirdel. Reza Jamehdor, M.D., writes:

> I have had the tremendous fortune of knowing these angelic individuals for nearly thirteen years and although it may seem overboard to use the term "angelic" as a human quality, I assure you that this family, specifically Hamid Tabatabai can be best characterized by no other term.  As an Emergency Physician, I have been trained to meet an individual and "understand" their core qualities in a few minutes.  I have had the past thirteen years to confirm to me of what I knew about Hamid after the first few seconds of meeting him in 1998.

Ex. 75, Ltr. from Reza Jamehdor, M.D.

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel 310-826-4700; Fax 310-826-4711

30.

As is reflected by these letters and the 11 additional letters which are attached as Exhibits 76 to 85 but, for reasons of brevity cannot all be excerpted, Mr. Tabatabai is a well-respected member of his community.  Mr. Tabatabai respectfully requests that the Court consider these letters as evidence of his good character and his exemplary life and grant him any variance necessary to reach a sentence of probation.

**B.**    **Just Punishment, Deterrence, Public Protection And Effective Correctional Treatment Are All Served By A Sentence Of Probation**

The goals of sentencing are to provide just punishment, affords adequate deterrence, protects the public and provides Mr. Tabatabai effective correctional treatment.  See 18 U.S.C. §§ 3553(a)(2)(A)-(D).  Given Mr. Tabatabai's minimal involvement in the offenses of conviction, and his strong moral character and history of good works, a sentence of probation is appropriate.

**IV.**    **TERMS OF SUPERVISED RELEASE OR PROBATION**

In addition to requesting a sentence of probation, Mr. Tabatabai also requests that the Court impose no limitations on his ability to work.  On August 27, 2011 (Docket No. 193), the Court gave notice that it is considering imposing the following conditions of release:

> 5.    The defendant shall not engage, as whole or partial owner, employee or otherwise, in any business involving loan programs, telemarketing activities, investment programs or any other business involving the solicitation of funds or cold-calls to customers without the express approval of the Probation Officer prior to engagement in such employment. Further, the defendant shall provide the Probation Officer with access to any and all business records, client lists and other records pertaining to the operation of any business owned, in whole or in part, by the defendant, as directed by the Probation Officer;

> 6.    The defendant shall not be employed in any position that requires licensing and/or certification by any local, state or federal agency without prior approval of the Probation Officer.

Mr. Tabatabai is presently employed as an accountant at a loan company, with the approval of his Probation Office.  Mr. Tabatabai is an accountant, and the

31.

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel 310-826-4700: Fax 310-826-4711

limitations that the Court is considering imposing would not further any of the goals of sentencing.  Nothing about Mr. Tabatabai's training and experience furthered any criminal objective, and there is no basis for the work restrictions presently under consideration by the Court.

## V.    <u>CONCLUSION</u>

Based upon the foregoing, and considering the full range of factors, it is respectfully requested that the Court sentence Mr. Tabatabai to probation, and that the Court not place any limitations on Mr. Tabatabai's ability to work.


Dated: September 26, 2011        Law Offices of James W. Spertus


By:    /S_____
                James W. Spertus
                Amanda R. Touchton
                Attorneys for Hamid Tabatabai

Law Offices of James W. Spertus
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel 310-826-4700; Fax 310-826-4711

Defendant Hamid Tabatabai's Sentencing Position Paper

Law Offices of James W. Spertus
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA, CA 90025
TELEPHONE 310-826-4700 FACSIMILE 310-826-4711

## PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

     I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action. My business address is 1990 South Bundy Drive, Suite 705, Los Angeles, CA 90025.

On the date indicated below, I served the foregoing documents described as:

**DEFENDANT HAMID TABATABAI'S SENTENCING BRIEF**

on the interested parties in this action by placing a true copy thereof, enclosed in a sealed envelope, addressed as follows:

Tami Keller
United States Probation Officer
11827 Ventura Blvd.
Studio City, CA 91604-2816

**BY U.S. MAIL**

[X]    I placed such envelope for deposit in the U.S. Mail for service by the United States Postal Service, with postage thereon fully prepaid.

[ ]    As follows:  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the United States that the forgoing is true and correct.

     Executed on September 26, 2011, at Los Angeles, California.


          /S _____
          Irene Clark